IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

BARBARA KAY BECKETT,  )     CASE NO. 4:13cv3057
                           )
Plaintiff,             )
                           )     MEMORANDUM AND ORDER ON
    vs.            )     REVIEW OF THE FINAL DECISION
                           )     OF THE COMMISSIONER OF
CAROLYN W. COLVIN,   )     SOCIAL SECURITY
Acting Commissioner of   )
Social Security,      )
                           )
Defendant.          )

Barbara Kay Beckett filed a complaint on March 12, 2013, against Carolyn W. Colvin, Acting Commissioner of the Social Security Administration. (ECF No. 1.) Beckett seeks a review of the Commissioner's decision to deny her application for disability insurance benefits and supplemental security income benefits under Title II and Title XVI of the Social Security Act (the Act), 42 U.S.C. §§ 401 et seq., 1381  et seq. The defendant has responded to the plaintiff's complaint by filing an answer and a transcript of the administrative record. (See ECF Nos. 10, 11). In addition, pursuant to the order of Judge Joseph F. Bataillon, dated June 19, 2013, (ECF No. 15), each of the parties has submitted briefs in support of her position. (See generally Pl.'s Br., ECF No. 16; Def.'s Br., ECF No. 26). After carefully reviewing these materials, I find that the Commissioner's decision must be affirmed.

## I.    BACKGROUND

Beckett initially applied for disability benefits on July 1, 2010, alleging an onset date of January 1, 2007. (See ECF No. 11, Transcript of Social Security

Proceedings (hereinafter "Tr.") at 134). She later amended the onset date to July 1, 2010, because she lacked insured status for Title II and the only claim to be adjudicated was the Title XVI claim. (Id. at 144, 257). After her application was denied initially and on reconsideration, (id. at 66-69, 70-73) Beckett requested a hearing before an administrative law judge (hereinafter "ALJ").   (Id. at 83-86). This hearing was conducted on October 20, 2011. (Id. at 36-58.) In a decision dated December 22, 2011, the ALJ concluded that Beckett was not entitled to disability insurance benefits. (Id. at 12-33). The Appeals Council of the Social Security Administration denied Beckett's request for review. (Id. at 1-6.) Thus, the ALJ's decision stands as the final decision of the Commissioner, and it is from this decision that Beckett seeks judicial review.

## II.   SUMMARY OF THE RECORD

Beckett, whose date of birth is June 17, 1968, (Id. at 134) alleged that she stopped working on May 1, 2007, because of her conditions. (Id. at 182). Beckett completed two years of college and had certifications in home health care, peer educator, and CNA. (Id. at 183). She had past work experience as a grill cook, home health care assistant, motel housekeeper, respite caregiver, and vocational workshop supervisor. (Id. at 184).

### A. Medical Evidence

Beckett alleged that her disability arose from chronic conditions, including Type 1 diabetes, low blood pressure, neuropathy, gastrointestinal issues, rheumatoid arthritis, and chronic obstructive pulmonary disease (COPD). (Id. at 182). The medical evidence supports some of these issues.

Beckett's primary care physician was Douglas J. States, M.D. She received medical care from him, physician assistants, and nurse practitioners between 2009

2

and 2011. (Id. at 284-317, 440, 443-45, 741-95). During that time, Beckett was treated for and prescribed medications for diabetes, anxiety, allergies, hypotension, gastroparesis, headaches, hypothyroidism, and renal insufficiency. (Id. at 284-317, 443-445, 741-95).

Beckett's hemoglobin was regularly tested to evaluate her diabetes. (Id. at 279). The target for the A1C test was 6.5. (Id. at 279). On May 5, 2009, Beckett's result was 6.3, which fell in the excellent diabetic control range. (Id. at 324). On August 10, 2009, the hemoglobin was 7.5, which fell in the good diabetic control range. (Id. at 328). On February 3, 2010, the hemoglobin was 8.6, which was in the fair diabetic control range. (Id. at 332). On March 29, 2010, her hemoglobin was 7.9, which was in the good diabetic control category. (Id. at 279). By June 2010, the A1C result was 6.2, which again fell in the excellent control range. (Id. at 353).

Beckett also received medical treatment at a hospital emergency room on a number of occasions. On January 26, 2009, it was determined that she had diffuse gastritis and a small duodenal ulceration, status post upper GI bleeding. (Id. at 416). She spent two days in the hospital. (Id.). She returned to the emergency room on July 25, 2009, complaining of abdominal pain, nausea, loss of appetite, vomiting, and diarrhea. (Id. at 392). She was discharged in improved condition with a clinical impression of gastroesophageal reflux disease. (Id. at 397-98).

On January 7, 2010, Beckett went to the emergency room complaining of a cough, sore throat, and difficulty breathing. (Id. at 388). She was diagnosed with bronchitis. (Id. at 389). She returned on January 26, 2010, complaining that she had been suffering from dyspnea for three weeks. (Id. at 380). The clinical impression was acute bronchitis, anxiety reaction with hyperventilation, and psychogenic hyperventilation syndrome. (Id. at 382). She returned again on February 11, 2010, complaining of palpitations, dyspnea, cough, nausea, and

weakness. (Id. at 366). She was discharged in good condition. (Id. at 372).

Beckett went back to the emergency room on February 15, 2010, again complaining of dyspnea, along with chest tightness, wheezing, palpitations, and severe anxiety. (Id. at 354). She was diagnosed as having hyperventilation syndrome and hypertension and was discharged in improved condition. (Id. at 359).

On September 24, 2010, Beckett went to the emergency room complaining of a headache and abdominal pain. (Id. at 450, 455). She refused to submit to a CT scan or a GI cocktail (Id. at 455). She was admitted for acute renal failure, but it was resolved by the time she was discharged on September 27, 2010. (Id. at 456-457). At that time, her blood pressure and blood sugars were well-controlled. (Id. at 457). She returned to the emergency room on October 20, 2010, complaining of abdominal pain. (Id. at 498). Beckett went back to the emergency room on January 22, 2011, again complaining of dyspnea. (Id. at 756). She was discharged in good condition after being treated with Ativan. The clinical impression was acute exacerbation of COPD and anxiety reaction. (Id.). On July 19, 2011, Beckett went to the emergency room with a cough, sinus pain, fever, chills, and muscle aches. (Id. at 752). It was determined that she had acute bronchitis. She was discharged in improved condition. (Id. at 753).

The medical evidence also shows that Beckett had cataract surgery on both eyes in December 2008. (Id. at 268, 573, 585-86, 597, 610-11). On June 4, 2010, Beckett had a colonoscopy, which indicated two probable polyps. (Id. at 351). She sought treatment for migraines from September 24, 2010, to August 17, 2011. (Id. at 669-687).

In January 2009, Beckett was placed in a boot after it was determined that she had a fracture in her foot. (Id. at 277). She continued to complain of pain in

January 2010. (Id. at 276). The boot was discontinued in March 2010 because she was not healing well and she had a foot ulcer. The physician discussed with her the relationship between elevated blood sugar readings and healing. (Id.). On January 13, 2011, Richard Raska, D.P.M., noted that Beckett had an ulcer on her foot which had not responded to conservative care for the previous six months. (Id. at 526, 539). He operated on it on January 13, 2011. (Id. at 527-28, 546-47). On February 3, 2011, Beckett reported she had been walking excessively on the foot, and Raska noted that patient noncompliance was a factor in the treatment. (Id. at 529).

In addition, Beckett reported that she was diagnosed with juvenile rheumatoid arthritis, but blood tests showed a normal rheumatoid factor of 6.3. (Id. at 416).

The record includes a physical residual functioning capacity (RFC) questionnaire which apparently was completed by States.[1] (Id. at 338-344). It indicated that Beckett began treatment in January 2009 and had last been seen on May 5, 2010. (Id. at 339). Her diagnoses included diabetes, gastroparesis, high blood pressure with orthostatic hypotension, neuropathy, COPD, and rheumatoid arthritis. The prognosis was chronic illness with medical management. The form indicates that Beckett's impairments were seldom severe enough to interfere with her attention and concentration. (Id. at 340). Beckett had the ability to ambulate effectively unassisted by a cane or other assistive device to perform daily activities such as traveling to and from a workplace, using standard public transportation, shopping, banking, and climbing several steps at a reasonable pace with the use of

---

[1] The form does not list a doctor in the blank space provided for it. It is signed, but the signature is not legible. Beckett does not refer to this assessment, and the Commissioner states in her brief that this form was completed by States.

a single hand rail. (Id.).

The form stated that Beckett's symptoms would interfere to the extent that Beckett was unable to maintain persistence and pace to engage in competitive employment. (Id. at 340). However, it stated that Beckett could work two to four hours per day and work four to six days per week. (Id. at 341). Her symptoms slightly impaired her ability to perform activities of daily living. States noted that Beckett's symptoms could be exacerbated by physical activity, movement or overuse, temperature extremes, work stress, and static positioning. It was medically reasonable to expect that she may need to lie down or recline periodically throughout the day to relieve or reduce her symptoms. She would be likely to miss work four or more times per month. (Id.). Beckett was likely to experience fatigue which would moderately impair her ability to work and would need four breaks in an eight-hour work day in addition to two standard breaks and a lunch break. (Id. at 342). Beckett could occasionally lift up to 20 pounds, sit for 60 minutes, and stand for 30 minutes. She had good use of both hands and fingers for bilateral manual dexterity. (Id. at 343). According to States, Beckett could sit for about six hours in an eight-hour day and stand or walk for about two hours. (Id.).

## B. Medical Opinion Evidence

Jerry Reed, M.D., completed a physical RFC assessment on September 9, 2010. (Id. at 429-436). He determined that Beckett could occasionally lift and/or carry 20 pounds and frequently lift and/or carry 10 pounds. (Id. at 430). Reed stated that she could stand and/or walk at least two hours in an eight-hour workday and sit about six hours in an eight-hour workday, with periodic sitting and standing to relieve pain. She was unlimited in pushing and pulling. Reed noted that Beckett had chronic conditions including insulin-dependent diabetes mellitus and

6

hypertension. The notes indicated a history of juvenile rheumatoid arthritis, but she was not under the care of a rheumatologist. Reed stated that Beckett had a medically determinable impairment that imposed periodic flares of symptoms, including neuropathy in the feet, a history of degenerative knees, and a history of asthma that would pose environmental limitations. Beckett would be precluded from heavier exertion related to low energy. (Id. at 431).

Reed stated that Beckett could occasionally climb, balance, stoop, kneel, crouch, and crawl. The limitations were based on Beckett's low energy and abdominal discomfort. (Id. at 431). She had no manipulative limitations, could write legibly on forms, and had no dexterity deficits despite the history of rheumatoid arthritis. (Id. at 432). She had previously had cataract surgery, and she had no visual limitations and was able to watch television and read the Bible. (Id.). She had no communicative limitations. (Id. at 433). Reed recommended that Beckett avoid concentrated exposure to extreme heat and cold, wetness, vibration, and fumes and odors. Her abdominal pain and elevated blood sugar levels limited her activities to an occasional basis. (Id.).

Reed noted that Beckett reported persistent pain, swollen feet, and stomach problems. Her blood sugar levels were poorly controlled. She was not seeking treatment for arthritic complaints. She also had a history of anemia, gastroparesis, and neuropathy, which imposed limitations that might reasonably wax and wane with symptom management. Reed found that Beckett's allegations as to the severity, intensity, and frequency of symptoms were partially credible because they were not fully supported by the objective findings. Beckett noted that stress exacerbated her GI symptoms and that she was on antianxiety medication, but she was not involved with mental health services and did not allege any mental restrictions. (Id. at 434).

Reed noted that the statement from the treating physician (States) was not given controlling weight due to inconsistencies within the report. (Id. at 435). The statement indicated that Beckett was able to stand and walk two hours per day and sit up to six hours in an eight-hour day, but it later noted that she could only work two to four hours per day for four to six days per week. The statement indicated that Beckett's impairments would interfere with competitive employment because she was unable to maintain pace and persistence. But that was contrary to the capabilities outlined in the statement, as well as the indication that Beckett's pain, symptoms, and medications would seldom interfere with attention and concentration. Reed said the totality of Beckett's work restrictions were considered in combination with the objective findings. (Id. at 435).

Beckett underwent a psychological evaluation on February 15, 2011, with Rebecca Schroeder, Ph.D. (Id. at 623). Beckett reported that she had last worked in 2007 in the housekeeping department at Ramada Inn, but she left that job due to medical issues including low blood pressure. (Id. at 624). Beckett stated that she had not worked regularly for more than three years because of her medical issues, including weakness, dizziness, and gastroparesis. She worked about two hours each week helping an elderly woman with her housework. (Id.).

Beckett reported that she was diagnosed with rheumatoid arthritis when she was 12, and the symptoms were once again causing her pain. (Id. at 625). Beckett stated that she has had depression and anxiety over the years and had taken antianxiety and antidepressant medications for the past 10 or 15 years, but she had never been involved in outpatient therapy. (Id.). She described herself as being tense and nervous most of the time, has a tendency to worry, and feels tearful. She said she has low energy and feels mentally tired all day. (Id. at 626). Beckett reported that she has had panic attacks for the past year when she becomes "dizzy,

tingly, and short of breath." (Id. at 627). To calm herself, Beckett said she uses an inhaler, Ativan, or marijuana. When she smokes marijuana, her appetite is improved and she feels better about herself. (Id.).

Schroeder reported that Beckett seemed to have average to above average intellectual functioning, exhibited a pleasant, cooperative attitude, exhibited good social and communication skills, was able to maintain a conversation, and appeared to be able to make good decisions for herself. (Id. at 628-29). Her mood seemed somewhat dysphoric, and her affect was somewhat restricted. She did not display a wide range of emotions. (Id. at 628).

Schroeder stated that Beckett might have some restrictions in her activities of daily living related to her mental health functioning because she might have a low energy level and chronic feelings of fatigue from depression. Beckett's anxiety might be exacerbated by isolation. But Beckett appeared capable of maintaining social functioning most of the time. She seemed to notice increases in her physical issues and in her symptoms of depression when she was under stress. She seemed able to sustain concentration and attention for at least a short task completion, was capable of understanding and remembering short and simple instructions, and was able to carry out instructions under ordinary supervision. She also seemed able to relate appropriately to coworkers and supervisors and to adapt to changes within her environment. (Id. at 629).

Schroeder diagnosed Beckett as having major depressive disorder, recurrent, mild to moderate; generalized anxiety disorder, with panic attacks; and cannabis abuse. (Id. at 630). She had moderate stressors including financial and occupational functioning. Her current GAF was 62.[2] Schroeder stated that

---

[2]   "The GAF is a numeric scale ranging from zero to one hundred used to

Beckett's prognosis for depression and anxiety was only fair.

Christopher Milne, Ph.D., completed a mental RFC assessment of Beckett on February 24, 2011. (Id. at 635-637). He stated that Beckett had moderate limitations in the ability to perform activities within a schedule, to maintain regular attendance, and to be punctual within customary tolerances. (Id. at 635). Milne stated that Beckett was capable of understanding, remembering, and carrying out short and simple instructions, showed adequate attention and concentration, was capable of maintaining socialization, and had the ability to adapt to change. Her social contact was limited because she was afraid to drive. (Id. at 637). On the psychiatric review technique, Milne stated that Beckett had affective, anxiety-related, and substance addiction disorders (Id. at 640), and a major depressive disorder, mild to moderate. (Id. at 643). Milne stated that Beckett had moderate restriction of activities of daily living, but no difficulties in maintaining social functioning, concentration, persistence, or pace. (Id. at 650). She had no episodes of decompensation. (Id.). Milne stated that Beckett's allegations were partially consistent with the overall pattern of evidence. (Id. at 652). The estimated GAF of 62 indicated only mild impairment in overall functioning. Beckett retained the capacity to handle simple instructions. Milne stated that although Beckett's condition was severe, it was not consistent with any claim of marked psychological limitations. (Id. at 652).

Gerald Spethman, M.D., affirmed Reed's RFC assessment. (Id. at 655). Spethman noted that Beckett had a credibility problem because she stated that light

---

rate social, occupational and psychological functioning 'on a hypothetical continuum of mental-health illness.'" Pate-Fires v. Astrue, 564 F.3d 935, 937 n. 1 (8th Cir. 2009) (quoting American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. 1994).

was a precipitating factor for migraines, but then stated that she liked to sit in the sunlight and read. And she alleged that dizziness and weakness prevented her from driving, but she drove herself to the mental evaluation on February 14, 2011. (Id.).

## C. Hearing Testimony

At a hearing on October 20, 2011, Beckett testified that she has pain in her feet, hands, and neck from rheumatoid arthritis. She cannot grip items with her hands and has a hard time getting up fast and moving fast because of the arthritis. (Id. at 40). Beckett said she takes insulin five or six times each day. (Id.). She stated that she has neuropathy in her legs almost up to her knees and it has caused her to fall. (Id. at 41). She said that her blood pressure drops when she stands, which causes her to need to lie down or sit down and put up her feet, but she has never passed out. (Id. at 42-43). She said she needs to take five or six breaks daily. (Id. at 42).

Beckett said she fasts when she's working because she does not know how her stomach is going to react to food and she sometimes has diarrhea. She said she needs to stay close to a restroom at work because she has diarrhea and vomiting, although medication has calmed down her stomach. She says she drives 30 miles to work and there is no restroom between her house and her job. (Id. at 43).

Beckett said she had previously had panic attacks, when it feels as if everything is closing in. Anti-anxiety medication helped at times. (Id. at 44). Beckett said her sleep was interrupted by the need to go to the bathroom. (Id. at 45). If she is moving around she claimed she can tolerate 30 minutes of activity, but if she is standing in one spot, she needs to take a break after 15 minutes. (Id. at 46). She said she can sit for 15 minutes before she needs to switch positions. She can climb about 10 steps and then needs to take a break. Beckett said she has difficulty dressing because of buttons and zippers. Using the computer hurts her

fingers she claims. (Id. at 46). Beckett said her husband helps her do most of the cooking and heavy chores around the house. (Id. at 47).

At the time of the hearing, she was working 10 hours each on Saturday and Sunday as a home health caregiver. The job required her to drive 60 miles round trip. (Id. at 45, 54). After working, Beckett said it took her two days to get her body back to normal. (Id. at 49-50). She had considered trying to find work that was less strenuous, but there was no other work that she enjoyed. (Id. at 51).

The vocational expert, Janice Hastert, stated that a claimant similar to Beckett could not perform any of her past work. However, there were representative jobs available to her, such as a surveillance system monitor, credit checker, or document preparer. There were a sufficient number of those jobs in the state of Nebraska and nationally. (Id. at 56).

### E. The ALJ's Decision

An ALJ is required to follow a five-step sequential analysis to determine whether a claimant is disabled. See 20 C.F.R. § 404.1520(a). The ALJ must continue the analysis until the claimant is found to be "not disabled" at steps one, two, four or five, or is found to be disabled at step three or step five. See id. In this case, the ALJ found that Beckett is not disabled. (See Tr. at 12-23).

Step one requires the ALJ to determine whether the claimant is currently engaged in substantial gainful activity. See 20 C.F.R. § 404.1520(a)(4)(i), (b). If the claimant is engaged in substantial gainful activity, the ALJ will find that the claimant is not disabled. See id. The ALJ found that Beckett had not engaged in substantial gainful activity since July 1, 2010, the application date. (Tr. at 17).

Step two requires the ALJ to determine whether the claimant has a "severe impairment." 20 C.F.R. § 404.1520(c). A "severe impairment" is an impairment

or combination of impairments that significantly limits the claimant's ability to do "basic work activities" and satisfies the "duration requirement."  See 20 C.F.R. § 404.1520(a)(4)(ii), (c); id. § 404.1509 ("Unless your impairment is expected to result in death, it must have lasted or must be expected to last for a continuous period of at least 12 months.").  Basic work activities include "[p]hysical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling"; "[c]apacities for seeing, hearing, and speaking"; "[u]nderstanding, carrying out, and remembering simple instructions"; "[u]se of judgment"; "[r]esponding appropriately to supervision, co-workers and usual work situations"; and "[d]ealing with changes in a routine work setting."  20 C.F.R. § 404.1521(b). If the claimant cannot prove such an impairment, the ALJ will find that the claimant is not disabled.  See 20 C.F.R. § 404.1520(a)(4)(ii), (c). The ALJ found that Beckett had the following severe combination of impairments: diabetes mellitus type I, rheumatoid arthritis, depression, and an anxiety disorder. (Tr. at 17). The ALJ found that it was not medically determinable that Beckett suffered from COPD and asthma, because no acceptable medical source had diagnosed Beckett with either COPD or asthma. (Id.). The record only documented that Beckett had experienced some symptoms of exercise-induced asthma that were exacerbated by her continued smoking of both tobacco and marijuana. In addition, the ALJ found it significant that Beckett had twice denied having any history of asthma in September and December 2010. The record also did not include any diagnostic testing that would objectively document Beckett's alleged respiratory impairments. (Id. at 18).

Beckett also alleged three other impairments which the ALJ found to be non-severe: meningioma, a right foot impairment, and an eye impairment. (Id.). Although Beckett had a small meningioma in the left frontoparietal region of her

brain, the record did not document any functional limitations in the ability to perform basic work activities because of the meningioma. The evidence also showed that Beckett had a history of a foot impairment, but again the record showed no functional limitations because of it. Beckett had also had cataract surgery, but the record did not show any functional limitations in her ability to perform basic work activities because of an eye impairment. The ALJ noted that Beckett had reported she was able to drive and read for several hours each week without any significant limitations. (Id.).

The ALJ also found that Beckett's abuse of marijuana was a non-severe impairment. The record did not document that Beckett experienced any functional limitations in her ability to perform basic work activities as a result of the marijuana abuse. (Id.).

Step three requires the ALJ to compare the claimant's impairment or impairments to a list of impairments. See 20 C.F.R. § 404.1520(a)(4)(iii), (d); see also 20 C.F.R. Part 404, Subpart P, App'x 1. If the claimant has an impairment "that meets or equals one of [the] listings," the analysis ends and the claimant is found to be disabled. See 20 C.F.R. § 404.1520(a)(4)(iii), (d). If a claimant does not suffer from a listed impairment or its equivalent, then the analysis proceeds to steps four and five. See 20 C.F.R. § 404.1520(a). The ALJ found that Beckett did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (Tr. at 18). The ALJ noted that the impairments no longer include a specific listing for diabetes mellitus, but diabetic peripheral and sensory neuropathy are evaluated as neurological impairments. Beckett's diabetes did not meet the criteria for peripheral neuropathies because she did not have peripheral neuropathy with disorganization of motor function in two extremities, resulting in sustained disturbance of gross

and dexterous movements, or gait and station, in spite of prescribed treatment. (<u>Id</u>. at 19).

The ALJ also determined that Beckett's rheumatoid arthritis did not satisfy the requirements for inflammatory arthritis. (<u>Id</u>.). The ALJ found that Beckett did not have a persistent deformity in one or more major peripheral weight-bearing joints resulting in the inability to ambulate effectively or in one or more major peripheral joints in each upper extremity resulting in the inability to perform fine and gross movements effectively. In addition, Becket did not have inflammation or deformity in one or more major peripheral joints; ankylosing spondylitis or other spondyloarthropathies; or repeated manifestations of inflammatory arthritis, with at least two constitutional symptoms or signs. (<u>Id</u>.).

The ALJ also found that the severity of Beckett's mental impairments, considered singly and in combination, did not meet or medically equal the criteria for affective or anxiety-related disorders. (<u>Id</u>.). The ALJ determined that Beckett had no more than a moderate restriction in activities of daily living as she is generally able to meet her personal care needs. The ALJ found that Beckett had no more than mild difficulties in social functioning. (<u>Id</u>. at 20). The ALJ also found that Beckett had no more than moderate difficulties with concentration, persistence, or pace. The ALJ noted that Beckett had not experienced any episodes of decompensation. Thus, the ALJ determined that she had not experienced an exacerbation or temporary increase in the symptoms or signs of her mental impairments, accompanied by a loss of adaptive functioning, which lasted for at least two weeks. (<u>Id</u>. at 20).

Step four requires the ALJ to consider the claimant's RFC[3] to determine whether the impairment or impairments prevent the claimant from engaging in "past relevant work." See 20 C.F.R. § 404.1520(a)(4)(iv), (e), (f).  If the claimant is able to perform any past relevant work, the ALJ will find that the claimant is not disabled.  See 20 C.F.R. § 404.1520(a)(4)(iv), (f).  In this case, the ALJ found that Beckett had no past relevant work, had at least a high school education, and was able to communicate in English. (Tr. at 25). The ALJ found that Beckett had the RFC to perform a range of sedentary work as defined in 20 C.F.R. § 416.967(a). (Tr. at 21). The ALJ determined that Beckett must be able to alternate between sitting and standing once every 30 minutes, should avoid concentrated exposure to extreme heat, extreme cold, wetness, vibrations, and fumes, could only occasionally climb, balance, stoop, kneel, crouch, and crawl, and can perform only simple work. (Id.). The ALJ considered Beckett's age, education, and work experience, as well as the entire record of medical evidence, including reports from nonexamining state agency consultants, and the RFC, and determined there are jobs that exist in significant numbers in the national economy that Beckett could perform. (Id. at 26). The ALJ determined that the VE's testimony was consistent with the information contained in the Dictionary of Occupational Titles. (Id.). Based on the VE's testimony, the ALJ concluded that Beckett was capable of making a successful adjustment to other work that exists in significant numbers in

---

[3] The assessment of a claimant's residual functional capacity measures the highest level of physical and mental activity the claimant can perform despite his or her limitations. See 20 C.F.R. § 404.1545 and 20 C.F.R. § 416.945. See also Lowe v. Apfel, 226 F.3d 969, 972 (8th Cir. 2000) (citing 20 C.F.R. § 404.1545(a)) (residual functional capacity is what the claimant is able to do despite limitations caused by all of the claimant's impairments.).

the national economy, and therefore, a finding of not disabled was appropriate. (Id. at 27).

### III.  STANDARD OF REVIEW

I must review the Commissioner's decision to determine "whether there is substantial evidence based on the entire record to support the ALJ's factual findings." Johnson v. Chater, 108 F.3d 178, 179 (8th Cir. 1997) (quoting Clark v. Chater, 75 F.3d 414, 416 (8th Cir. 1996)).  See also Collins v. Astrue, 648 F.3d 869, 871 (8th Cir. 2011).  "Substantial evidence is less than a preponderance but enough that a reasonable mind might accept as adequate to support the conclusion."  Kamann v. Colvin, 721 F.3d 945, 950 (8th Cir. 2013) (internal citations omitted).  A decision supported by substantial evidence may not be reversed, "even if inconsistent conclusions may be drawn from the evidence, and even if [the court] may have reached a different outcome." McNamara v. Astrue, 590 F.3d 607, 610 (8th Cir. 2010).  Nevertheless, the court's review "is more than a search of the record for evidence supporting the Commissioner's findings, and requires a scrutinizing analysis, not merely a 'rubber stamp' of the Commissioner's action." Scott ex rel. Scott v. Astrue, 529 F.3d 818, 821 (8th Cir. 2008) (citations, brackets, and internal quotation marks omitted).  See also Moore v. Astrue, 623 F.3d 599, 602 (8th Cir. 2010) ("Our review extends beyond examining the record to find substantial evidence in support of the ALJ's decision; we also consider evidence in the record that fairly detracts from that decision.").

I must also determine whether the Commissioner's decision "is based on legal error." Collins v. Astrue, 648 F.3d 869, 871 (8th Cir. 2011) (quoting Lowe v. Apfel, 226 F.3d 969, 971 (8th Cir. 2000)).  "Legal error may be an error of procedure, the use of erroneous legal standards, or an incorrect application of the

17

law." Id. (citations omitted).  No deference is owed to the Commissioner's legal conclusions.  See Brueggemann v. Barnhart, 348 F.3d 689, 692 (8th Cir. 2003). See also Collins, 648 F.3d at 871 (indicating that the question of whether the ALJ's decision is based on legal error is reviewed de novo).

## IV.   ANALYSIS

Beckett asserts that the Commissioner's decision is not consistent with the law and that the findings of fact are not supported by substantial evidence on the record as a whole. I will address Beckett's specific arguments below.

### Hypothetical Question

Beckett argues that the hypothetical question asked of the vocational expert failed to include her moderate limitations on concentration, persistence and pace. (Plf's Brf at 4).

The ALJ asked the VE to assume a claimant who was the same age as Beckett, who had the same education, work history and background, who was limited to work at the sedentary level, who needed to have a job in which she could alternate sitting and standing approximately every 30 minutes, who should avoid concentrated exposure to extreme cold or heat, wetness, vibrations and fumes, who could only occasionally climb, balance, stoop, kneel, crouch and crawl, and who was limited to simple work. (Tr. at 55). When the ALJ asked whether such a claimant could perform any of Beckett's past work, the VE responded "no." (Id. at 56). However, the VE stated that such an individual could perform jobs in the sedentary, unskilled category, which included jobs such as surveillance system monitor, of which there were 315 in Nebraska and 24,000 nationally; credit checker, of which there were 315 in Nebraska and 24,000 nationally; or document

preparer, of which there were 160 in Nebraska and 30,000 nationally. The VE stated that those jobs are representative. (Id.).

In support of her argument, Beckett cites O'Connor-Spinner v. Astrue, 627 F.3d 614 (7th Cir. 2010), in which the appellate court determined that the ALJ's hypothetical did not supply the VE with adequate information to determine whether the claimant could perform jobs in the national economy. The court stated that the ALJ is required to orient the VE to the totality of a claimant's limitations, including deficiencies in concentration, persistence, and pace. Id. The most effective way to ensure that the VE is apprised fully of the claimant's limitations is to include all of them directly in the hypothetical. Id.

However, the court noted that it had not insisted on a per se requirement that the ALJ use the specific terminology of "concentration, persistence, and pace" in the hypothetical. Id. If the record shows that the VE independently reviewed the medical record or heard testimony addressing a claimant's limitations, the court may assume that the VE is familiar with those limitations. Id. In that case, the ALJ asked a series of increasingly restrictive hypotheticals to the VE, from which the court inferred that the VE's attention was focused on the hypotheticals and not on the record. In addition, there was no evidence that the VE reviewed the claimant's medical history, as opposed to her work history, or heard testimony about the limitation. Id. The court held that in most cases, the ALJ should refer expressly to limitations on concentration, persistence, and pace in the hypothetical "in order to focus the VE's attention on these limitations and assure reviewing courts that the VE's testimony constitutes substantial evidence of the jobs a claimant can do," and it remanded the matter for further proceedings. Id. at 621.

In the case at bar, the VE was present for the hearing and heard Beckett's testimony. (Tr. at 37). The VE testified that she had prepared a work history

19

analysis. (Id. at 55). Beckett does not challenge the ALJ's credibility finding or determination of her RFC. The hypothetical question was based on the RFC finding. The ALJ found that Beckett's statements concerning the intensity, persistence, and limiting effects of her symptoms were not credible because they were inconsistent with the RFC assessment. (Id. at 22).

The ALJ found that Beckett had no more than moderate difficulties with concentration, persistence, or pace, as evidenced by her ability to use a touch pad computer, operate a motor vehicle, and attend to her surroundings and navigate simultaneously and independently. The ALJ found that Beckett was able to sustain the requisite level of attention and concentration to attend church regularly, read the Bible, and watch television for up to two hours at a time. She was able to help her son with his homework and was able to perform multi-step household chores. Most significantly, Beckett was able to successfully work two 10-hour shifts as a home health aide. (Id. at 20).

A hypothetical question posed to the vocational expert is sufficient if it sets forth impairments supported by substantial evidence in the record and accepted as true by the ALJ. Hunt v. Massanari, 250 F.3d 622 (8th Cir. 2001). The hypothetical question must capture the concrete consequences of the claimant's deficiencies. Id. In addition, the ALJ may exclude any alleged impairments that he has properly rejected as untrue or unsubstantiated. Id. In this case, the ALJ did not specifically include concentration, persistence, and pace in the hypothetical question presented to the VE. But the ALJ found that Beckett had no more than moderate difficulties with those attributes. (Tr. at 20). The ALJ explained his reasoning and identified the inconsistencies between Beckett's claims and the medical evidence in the record.

When the ALJ articulates the inconsistencies on which he relies in discrediting the claimant's subjective complaints, and when those inconsistencies are supported by the record, the credibility finding should be affirmed. Hall v. Chater, 109 F.3d 1255 (8th Cir. 1997). The ALJ referred to the evidence that a rheumatoid factor test performed in January 2010 showed a negative result for rheumatoid arthritis. In addition, she had not been placed on any disease-modifying antirheumatic drugs, and her only significant treatment was a self-prescribed baby aspirin regimen. The record did not corroborate her allegations with any substantial evidence. (Tr. at 22).

Although a claimant's subjective complaints may not be discounted by the ALJ solely because the objective medical evidence does not fully support them, the ALJ may find that these allegations are not credible if there are inconsistencies in the evidence as a whole. Buckner v. Astrue, 646 F.3d 549 (8th Cir. 2011). A reviewing court will defer to the ALJ's credibility finding if the ALJ explicitly discredits a claimant's testimony and gives a good reason for doing so. Id.

The ALJ gave little weight to the statement from Beckett's treating physician, States, because it was not consistent with the record as a whole. (Tr. at 24). The opinion was internally inconsistent because States opined that Beckett was unable to maintain persistence and pace to engage in competitive employment, but States' also concluded that Beckett's symptoms could seldom be expected to interfere with her attention and concentration. States' opinion was also inconsistent with Beckett's own reports regarding the activities of daily living and work activities in which she engages. States opined that Beckett could perform work activities for between two and four hours per day, for between four and six days per week. He also stated that Beckett could perform work at less than sedentary

level for no more than four hours per day, but she was currently engaged in work activities at the medium exertional level for 10 hours per day. (Id.).

The ALJ gave significant weight to the opinions of the state consultants. The nonexamining state agency psychological consultant, Milne, opined that Beckett was moderately limited in her ability to perform activities within a schedule, but she was capable of understanding, remembering, and carrying out short and simple instructions, possessed adequate abilities to concentrate and focus, and had the ability to adapt to changes. (Id.). He concluded that Beckett had moderate restrictions regarding activities of daily living, but no restrictions with either social functioning or her ability to maintain concentration, persistence, or pace. (Id. at 24). The ALJ noted that the state agency consultants reached their conclusions on the basis of careful analyses of Beckett's longitudinal medical history and their opinions were generally consistent with the history. (Id. at 25).

The ALJ also found the opinion of the consultative examiner, Schroeder, was entitled to significant weight because it was consistent with the findings of the detailed mental assessment she performed on Beckett. Schroeder's conclusions were consistent with the record as a whole and not inconsistent with any substantial evidence of record. (Id.). The ALJ determined that the RFC assessment was supported by the record as a whole, including the medical evidence of record, the opinions, and Beckett's work history. (Id.).

I find no error in the hypothetical question asked by the ALJ. Although it did not include every possible impairment as alleged by Beckett, the ALJ properly excluded impairments that the ALJ found were not substantiated by the record. The ALJ properly explained his reasons for finding that Beckett was not disabled and detailed the inconsistencies in the record.

*Part-Time Work*

Beckett also argues that the hypothetical failed to discuss the fact that Beckett was working two days per week which required a two-day recuperation period. (Pl.'s Brf at 6). The ALJ found it probative that Beckett was currently performing work activities as a home health aide, which is semiskilled work generally performed at the medium exertional level. The ALJ determined that her ability to work for 20 hours per week at that level indicated that Beckett was capable of performing work activities at a less than sedentary exertional level on a fulltime basis. (Tr. at 23).

It is not unreasonable for an ALJ to note that a claimant's daily activities, *including part-time work*, were inconsistent with her claim of disabling pain. Harris v. Barnhart, 356 F.3d 926 (8th Cir. 2004).    In addition, the ALJ noted that Beckett stated she had limited her consideration of alternative jobs to those which she would enjoy. The ALJ found that Beckett's current underemployment was likely a lifestyle choice and not a situation imposed by her mental and physical impairments. (Tr. at 24).

The ALJ also found it probative that Beckett reported engaging in basic work activities and activities of daily living which were inconsistent with her allegations of disability. (Id.). She was generally able to meet her personal care needs. (Id. at 19, 203). She had a driver's license and drove on a regular basis, including a 60-mile roundtrip commute to her part-time job. (Id. at 19, 45, 50, 54). Beckett was able to perform routine household chores, including sweeping, doing laundry, washing dishes, and cooking.  (Id. at 19, 203). She reported helping an elderly neighbor with housework in February 2011. (Id. at 19, 623, 626). The ALJ found Beckett's allegations to be less than credible.

23

"[A]cts such as cooking, vacuuming, washing dishes, doing laundry, shopping, driving, and walking, are inconsistent with subjective complaints of disabling pain." Medhaug v. Astrue, 578 F.3d 805, 817 (8th Cir. 2009). "Acts which are inconsistent with a claimant's assertion of disability reflect negatively upon that claimant's credibility." Id., quoting Johnson v. Apfel, 240 F.3d 1145, 1148 (8th Cir. 2001).

The combination of part-time work and the ability to take part in activities of daily living  support the ALJ's finding that Beckett is not disabled. The ALJ took into consideration her testimony and statements about her abilities and weighed that information with his determination as to her credibility. I find no error in the failure to include the part-time work in the hypothetical question.

## V.   CONCLUSION

The ALJ considered Beckett's age, education, work experience, and RFC, and determined there are jobs that exist in significant numbers in the national economy that Beckett could perform. (Tr. at 26). The ALJ determined that the VE's testimony was consistent with the information contained in the Dictionary of Occupational Titles. (Id. at 26). Based on the VE's testimony, the ALJ concluded that Beckett was capable of making a successful adjustment to other work that exists in significant numbers in the national economy, and therefore, a finding of not disabled was appropriate. (Id. at 27). The ALJ based his decision on the entire medical record, testimony at the hearing, and opinions of experts. I find that there is substantial evidence based on the entire record to support the ALJ's factual findings.  Johnson v. Chater, 108 F.3d 178, 179 (8th Cir. 1997). I find that the decision must be affirmed.

24

IT IS ORDERED that the Commissioner of Social Security's decision is affirmed.

Dated April 7, 2014.

BY THE COURT

Warren K. Urbom
United States Senior District Judge